E-FILED
Friday, 08 November, 2019  10:57:07 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL LEE PARKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 19-2071-MMM |
| | ) |
| LT. LISA WHITE, et al., | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW – AMENDED COMPLAINT

Plaintiff, proceeding *pro se* and currently incarcerated at the Dixon Correctional Center, files an amended complaint under 42 U.S.C. § 1983 action alleging deliberate indifference, excessive force and unconstitutional conditions of confinement at the Coles County Jail ("Jail"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.  In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor.  *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013).  However, conclusory statements and labels are insufficient.  Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted).  While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

On April 3, 2017, Plaintiff was confined at the Jail where he had been on suicide watch for an undisclosed period.  Plaintiff complains that on that date and for the next two weeks, Defendant Lieutenant Lisa White kept him on suicide watch even though he was no longer

1

"actively suicidal." He also claims that Defendant White kept him in a cell which was very cold and provided him only a smock, without a cot or blanket.

On May 4, 2017, Plaintiff was taken to state court for a hearing scheduled by Plaintiff's public defender who was requesting that Plaintiff undergo a mental health evaluation and potential hospitalization. Plaintiff claims that while walking into court, he swallowed a small piece of a razor blade, not indicating how he came to be in possession of it. Plaintiff told his attorney who, in turn, informed the presiding judge, Defendant James R Glenn. Counsel requested that Plaintiff be taken to the hospital for medical attention. Plaintiff, however, refused to go voluntarily, claiming that if he were taken, it would have to be by ambulance.

While in court, Plaintiff he was escorted by Officer Kastl, believed to be a court employee. While Counsel and the Judge were speaking, Plaintiff attempted to pull away from Officer Kastl to "bang his head on the bench." Officer Kastl shook Plaintiff out of the room and tackled him in the hallway. Plaintiff began kicking, telling the officer that he would take his gun and shoot himself. Plaintiff does not name Officer Kastl as a Defendant and does not claim that the Officer engaged in excessive force. Plaintiff was thereafter returned to the Jail, apparently without having been taken to the hospital.

When Plaintiff arrived at the Jail, Defendant Sergeant Beadles allegedly grabbed him by the arms, took him upstairs and slammed him against the wall, telling nursing staff "he is just lying about swallowing a blade." Later, while Defendant Beadles was escorting Plaintiff to a suicide watch room, Plaintiff pulled away, intentionally slamming his head against a set of metal bars. Plaintiff indicates that this "cracked the front of my head open." In response, Defendant slammed Plaintiff against a locked exit door and "dry tazed" him for 15 to 20 seconds. When Plaintiff fell to the floor, Defendant dragged him to another room.

Plaintiff claims that there was an unidentified Detective in this room and that the Detective pulled his hair and told him not to say a word. When Plaintiff complained that he was in pain, the Detective stated that he did not care. Defendant Beadles and the Detective thereafter strapped Plaintiff into a restraint chair. It appears that medical staff was called to evaluate Plaintiff as he indicates that "nursing" told him that the laceration of his forehead would heal.

Plaintiff claims that he was kept in the restraint chair for three days upon orders of Defendant White. When Defendant released him, she allegedly placed a shock bracelet on his ankle with the capacity to release 100,000 volts of electricity. Plaintiff does not claim, however, that he received any shock from the device.

Plaintiff asserts that the Defendants exhibited deliberate indifference to his serious mental health needs as the Jail had a medical doctor available, but not a psychiatrist. He also claims that Defendants White, Beadles and the unidentified Detective fail to provide him adequate medical care and that Defendant Beadles and the Detective used excessive force against him. Plaintiff bolsters this claim by asserting that Defendant Beadles left a bruise on his left arm.

Plaintiff makes an unrelated claim that he was kept in inhumane conditions of confinement for 147 days while in pretrial detention. The room in which he was held was "smaller than a closet" and did not have a toilet or sink. As Plaintiff was previously informed, however, "defendants are properly joined in a single action only if they are parties to a single transaction or occurrence common to all defendants, and the claims against them involve a common question of fact or law." *Ghashiyah v. Frank*, No. 05-0766, 2008 WL 680203, at *2 (E.D. Wis. Mar. 10, 2008). *See also, George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007), "[u]nrelated claims against different defendants belong in different suits." The conditions of confinement in pre-trial detention are unrelated to the April 3, 2017 claims regarding the suicide

cell and the May 4, 2017 claims alleging deliberate indifference and use of excessive force. They are, therefore, DISMISSED.

## ANALYSIS

As Plaintiff was a pretrial detainee during the events at issue, his claims are reviewed under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17 (2nd Cir. 2017). Under the Fourteenth Amendment standard, a pretrial detainee need establish that the defendant's conduct was objectively unreasonable, not that defendant was subjectively aware that it was unreasonable. *Miranda v. County of Lake*, 900 F.3d 335, 2018 WL 3796482, at *9 (7th Cir. 2018).

Plaintiff claims that Defendant White should not have kept him in a suicide cell as he was not actively suicidal. Plaintiff does not claim, however, that medical personnel released him from suicide watch. Furthermore, he has pled several instances of self-harm and threatened suicide. As result, he fails to state a claim that Defendant White exhibited deliberate indifference in maintaining him on suicide watch status.

Plaintiff also asserts that Defendant White kept him in a cold suicide watch cell without a cot or blanket. While these conditions might otherwise be viewed inhumane, it is recognized that a prisoner's conditions of confinement claim "must be considered in the context of his status at the time." *Williams v. Schmidt*, No. 14-487, 2019 WL 1046167, at *2 (W.D. Wis. Mar. 5, 2019). A prisoner on suicide watch must, of necessity, be deprived of bedding and other items which he might otherwise use to harm himself. *Id*. at *2. It does not violate the Eighth Amendment to subject an individual to "harsh" conditions where there are no "reasonable

4

alternatives." *See Id.* citing *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012). Plaintiff, therefore, fails to state a claim as to the lack of a cot and blanket in the cell.

While Plaintiff's claim that the suicide watch cell was unreasonably cold might otherwise state a claim, Plaintiff does not plead any particulars as to the cell temperature. The Court notes that these claims arose in April, rather than the winter months, and is not clear that the cell would be so cold as to rise to the level of a constitutional violation. Plaintiff will be given an opportunity, however, to replead this claim with more specificity, should he choose.

Plaintiff makes a bare claim that Defendant White ordered him confined three days in a restraint chair. It is unclear whether Plaintiff was periodically released from this confinement or essentially bound for three days. This allegation asserting excessive force by Defendant White will proceed, pending a more fully developed record.

Plaintiff alleges against Defendant Beadles that when he was returned to the Jail, Defendant Beadles slammed him against the wall, telling nursing staff that he had lied about swallowing the razor blade. As it does not appear that there was any reason for this use of force, this claim will go forward. Plaintiff fails, however, to state a claim that Defendant Beadles exerted unnecessary force when he slammed Plaintiff against the door and tazed him after Plaintiff broke away and slammed his head, injuring himself. Defendant's actions in subduing Plaintiff who was intent on self-harm, appear reasonable and justified. This claim is dismissed.

Plaintiff's claims as to the unidentified Detective who pulled his hair will proceed. This is so, as the Detective apparently acted after Plaintiff had been tazed and subdued so that there was no need for any force to be used. *Reid v. Melvin*, 695 Fed.Appx. 982, 983 (7th Cir. 2017) (even *de minimus* force may not be used if there is no justification at all for the use of force).

5

Plaintiff fails, however, to plead a claim against Defendant Beadles and the Detective regarding his forehead injury. It appears that Defendants called a member of nursing staff who evaluated Plaintiff and indicated that the laceration would heal. Plaintiff does not assert otherwise, or plead any continued symptoms regarding his forehead injury. As a result, does not establish that he exhibited a serious medical need to which Defendants were deliberately indifferent.

Plaintiff also asserts that he was seriously mentally ill and that there was no mental health professional available at the Jail. While Plaintiff apparently asserts this claim against Defendants White and Beadles, he does not allege that either had the authority to secure the services of a mental health provider. *See McGill v. Duckworth*, 944 F.2d 344, 348–49 (7th Cir. 1991) (a plaintiff may not "tax employees of the prison system with the effects of circumstances beyond their control.") Plaintiff has also named Sheriff Jim Rankin, without pleading any claims against him. While Defendant Rankin might otherwise be dismissed, it appears that the Sheriff would have the authority to ensure that mental health services were available to those prisoners in need of them. Accordingly, this case shall proceed on a claim that Sheriff Rankin was deliberately indifferent in failing to provide Plaintiff access to mental health treatment.

Plaintiff also names Judge James Glenn, without pleading any allegations against him. "[T]o be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir.2005) (citations omitted). Merely naming a defendant in the caption is insufficient to state a claim. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir.1998). Furthermore, as a judge, Defendant Glenn has absolute immunity from suit for claims arising from his judicial acts. *Agrawal v. Pallmeyer*, 313 Fed. Appx. 866, 867 (7th Cir. 2009) (absolute immunity protects judges from the fear of

6

future litigation brought by disgruntled litigants unhappy with judicial decision-making.) *See also*, *Lowe v. Letsinger*, 772 F.2d 308, 312 (7th Cir. 1985) (denying on the basis of absolute judicial immunity, § 1983 claim asserted against state court judge). Defendant Judge Glenn is dismissed with prejudice.

The Court notes that Officer Bennett is listed in the caption but, as Plaintiff does not reference him in the amended complaint, he is DISMISSED as well. *Collins*, 143 F.3d at 334.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed on the claim that Defendant Sheriff Rankin was deliberately indifferent for the lack of available mental health treatment. It will also proceed on the claims that Defendant White exerted excessive force when she confined Plaintiff to a restraint jail chair for three days, that Defendant Beadles exerted excessive force when he slammed Plaintiff against a wall in the Jail healthcare unit and that the Detective exerted excessive force in pulling Plaintiff's hair after he had been subdued. The clerk is directed to add "Doe Detective" to the caption. Plaintiff is advised that it will be his responsibility, through initial disclosures and discovery to determine the identity of this individual. Defendants Glenn, Kastl and Bennett are DISMISSED.

2. Plaintiff will be given an opportunity, within 30 days, to amend his complaint if he wishes to plead a claim against Defendant White for the cold conditions in the suicide cell. If Plaintiff does so, he is to identify the pleading as a second amended complaint. It must stand complete on its own, asserting all of his claims without reference to a prior pleading. If Plaintiff does not do so, this case shall proceed on the claims identified herein. All other claims will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15.

3. If Plaintiff wishes to assert a claim for the conditions in pretrial detention, he must file this is a separate action with responsibility for the additional filing fee. *See Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011).

4. The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

5. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

7. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court, and shall also file a certificate of service stating the date on which the copy was mailed.

Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

8. Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

9. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

10. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT

DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

ENTERED: 11/8/2019

                                                          s/Michael M. Mihm
                                                   MICHAEL M. MIHM
                                              UNITED STATES DISTRICT JUDGE